UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **SCHAFER AND WEINER, PLLC, et al.**, <br><br> Defendant. | 2:19-cv-13696 <br><br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

The legal doctrine of "res judicata"—roughly translated from Latin as "the thing has been decided"—prevents a party from relitigating an issue that has already been decided, or could have been raised but was not, in a previous lawsuit. The purpose of the doctrine is to promote consistency and avoid inefficient repetition in the courts. In this case, Plaintiff—the United States of America on behalf of the Internal Revenue Service ("IRS")—had brought claims as a creditor in a Chapter 11 bankruptcy proceeding to pursue taxes owed. Having lost in the bankruptcy court, the government both appealed the bankruptcy judge's decisions to this court and filed this separate lawsuit seeking to recover some of the unpaid taxes. After carefully reviewing the facts and legal claims raised, the Court concludes that application of the doctrine of res judicata bars Plaintiff from litigating this suit because the claims it

1

raises here could have been raised in the bankruptcy matter but were not. Defendants' motion to dismiss will therefore be **GRANTED**.

## I.   Background

The following facts are not in dispute and are taken from the bankruptcy judge's opinion and from two orders of this Court affirming rulings of the bankruptcy judge.[1] Central Processing Services ("the Debtor" or "CPS") was the debtor in a prior Chapter 11 bankruptcy case. CPS is in the business of providing printing, mailing, and lockbox services in the fundraising and medical industries. The owners are Richard T. Cole and Robert W. Burland. *Id*. at PageID.2.

Cole and Burland also own Associated Community Services, Inc. ("ACS"), which is in the business of soliciting donations for charitable organizations by direct mail and telephone. ACS previously filed its own Chapter 11 case on March 13, 2014. The largest creditor in the ACS bankruptcy proceeding was the IRS. After extensive litigation, ACS and the IRS agreed to an order that allowed the IRS a claim of just under $12 million. As part of the settlement, ***CPS*** agreed to guarantee part of ACS's debt to the IRS. *Id*. at PageID.2.

---

[1] Bankr. Ct. Op., Adv. P. No. 19-43217, ECF No. 153.
Order Aff'g Bankr. Ct., Case No. 19-13427, ECF No. 18.
Order Aff'g Bankr. Ct., Case No. 19-13711, ECF No. 15.

But on March 6, 2019, CPS also filed for Chapter 11 bankruptcy. Once again, the IRS was by far the largest creditor. Much like the ACS Case, the predominant issue in CPS's bankruptcy case was the treatment of the IRS's claim. *Id*. at PageID.2-3. On June 28, 2019, Debtor CPS filed an objection to the IRS's proof of claim. The IRS filed a response, and the bankruptcy court heard the objection on August 16, 2019. On September 5, 2019, the bankruptcy court issued an opinion holding that the IRS's allowed claim was entitled to priority under section 507(a)(8) of the Bankruptcy Code. That meant that, under section 1129(a)(9)(C) of the Bankruptcy Code, the IRS would have to receive the total value of its allowed claim on the effective date of any confirmed plan of reorganization. *Id*. at PageID.3.

While the Debtor and the IRS litigated over the allowance and priority of the IRS's proof of claim, the IRS was also active in seeking other relief in this case. On August 1, 2019, Plaintiff, on behalf of the IRS, filed a motion to dismiss the Chapter 11 bankruptcy matter. Mot. to Dismiss, Adv. P. No. 19-43217, ECF No. 78. Plaintiff argued that there was cause for dismissal under section 1112(b)(1) of the Bankruptcy Code for two reasons. First, cause existed under section 1112(b)(4)(A) because of a substantial, continuing loss to the Debtor's estate and the absence of any reasonable likelihood of rehabilitation. Second, cause existed under section 1112(b)(4)(I) because the Debtor failed to timely pay post-petition

taxes to the IRS. Bankr. Ct. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.3.

In support of both arguments, Plaintiff relied on the Debtor's own information that it provided in the monthly operating reports filed with the bankruptcy court. Citing the Debtor's monthly operating reports for the months of March through June 2019, Plaintiff noted that the Debtor experienced a cumulative loss during that period of $648,684.00. Citing those same operating reports, Plaintiff next noted that during this period, the Debtor also failed to pay the IRS $121,375.00 of post-petition withheld income taxes, and $42,063.00 of post-petition withheld FICA taxes. *Id*. at PageID.3-4.

Although section 1112(b)(1) authorizes the bankruptcy court to dismiss a Chapter 11 case or convert it to Chapter 7, whichever is in the best interest of the creditors, Plaintiff did not seek conversion, and expressly stated in the dismissal motion that "the United States seeks dismissal, not conversion, of the case." Mot. to Dismiss, Adv. P. No. 19-43217, ECF No. 78, PageID.6. Consistent with that request, the proposed order attached to the dismissal motion provided only for dismissal, not conversion, of the Debtor's case. The Debtor filed an objection to the dismissal motion, but the only creditors who filed responses all supported dismissal. On August 22, 2019, the Federal Trade Commission, and the

states of Idaho, Kansas, Maryland, and Michigan all filed concurrences to the dismissal motion. *Id*. at PageID.4.

The bankruptcy court scheduled a hearing on the dismissal motion for September 6, 2019. The day before the hearing on the dismissal motion, the Debtor filed a rather detailed "modification" to its objection, which stated that the Debtor consented to dismissal, so long as the order dismissing the case contained certain provisions regarding professional fee applications, payment of United States Trustee fees, and closing of the case. *Id*. at PageID.4-5.

At the hearing the following day, the Debtor confirmed on the record its consent to dismissal. The FTC and the states of Idaho, Kansas, Maryland, and Michigan all stated on the record at the hearing that they also consented to dismissal. In addition, the Debtor's landlord, HJH Southfield, 2 LLC, although not having filed a response to the Dismissal Motion, stated on the record that it too consented to dismissal, as did the United States Trustee. The IRS noted at the hearing that there were no longer any pending objections to the dismissal motion, and that the only issues remaining were "the terms of the dismissal." *Id*. at PageID.5.

Plaintiff had attached the form of a proposed order to the dismissal motion that succinctly stated only that the dismissal motion is "granted" and that the "bankruptcy case is dismissed for cause, pursuant to 11 U.S.C. § 1112(b)(1)." Despite having submitted such a proposed order,

5

Plaintiff changed course and indicated at the hearing that it wished to submit a revised proposed dismissal order. Plaintiff then handed the bankruptcy judge a paper copy of a revised, much longer proposed order with the following new provisions: an injunction barring the Debtor from filing a bankruptcy case for 180 days; a directive that the Debtor file all past-due state and federal tax returns within 30 days; an injunction barring any payments to the Debtor's professionals, principals, and related companies until all post-petition state and federal taxes were paid in full; a directive that the Debtor file a schedule of all post-petition disbursements made by the Debtor to its professionals, principals, and related companies within 30 days; and a provision for the bankruptcy court to retain jurisdiction "to hear any motions for disgorgement of any disbursements and payments necessary to unwind the bankruptcy, and over any fee applications and objections thereto." Plaintiff explained that it had not yet circulated a copy of the revised proposed order to the Debtor, the United States Trustee, or any other parties, but had copies available to distribute to them at the hearing. *Id.* at PageID.5-6.

The Debtor, the United States Trustee, and all creditors in attendance at the hearing requested that they be given an opportunity to review and approve the form of any revised proposed dismissal order before submission to the bankruptcy court for entry. The bankruptcy court granted the dismissal motion, finding that Plaintiff had established

6

cause for dismissal under section 1112(b), and finding that the IRS, the Debtor, the United States Trustee, and all creditors in attendance at the hearing agreed that the case should be dismissed. *Id.* at PageID.6.

However, the bankruptcy judge explained that he would not try to settle the form of the proposed order on the record at the hearing because the Debtor, the United States Trustee, and the creditors at the hearing had not yet seen Plaintiff's revised proposed order with its new provisions. In addition, the Debtor and the United States Trustee both stated that they too had additional terms that they wished to include in the order. The bankruptcy judge therefore instructed Plaintiff, as the prevailing party, to prepare and circulate to the Debtor, the United States Trustee, and the creditors who attended the hearing a draft of a proposed order and seek their approval as to its form. The bankruptcy judge further instructed Plaintiff that if it was unable to promptly obtain approval by all parties to the form of a dismissal order, then Plaintiff should use the procedure set forth in the Local Bankruptcy Rules for the presentment of a proposed order. *Id.* at PageID.6-7.

The bankruptcy judge was willing to permit the parties some time following the hearing to agree on the form of an order to memorialize the bankruptcy court's ruling dismissing the Debtor's Chapter 11 case. However, two weeks went by after the hearing without a proposed order being submitted to the court. *Id.* at PageID.7. Hearing nothing further

7

from the parties, on September 23, 2019, the bankruptcy court entered an order dismissing the case to avoid further delay. Bankr. Ct. Order on Mot. to Dismiss, Adv. P. No. 19-43217, ECF No. 127.

The dismissal order states that the dismissal motion is granted and that the Chapter 11 case is dismissed under section 1112(b) of the Bankruptcy Code. *See* Bankr. Ct. Order, No. 19-43217, ECF No. 127. The dismissal order grants only the relief requested in the dismissal motion— i.e., dismissal of the Debtor's Chapter 11 bankruptcy matter, and contains none of the additional provisions that Plaintiff sought to be included in the draft of the revised proposed order that it presented to the bankruptcy judge and the parties at the hearing. The only difference between the dismissal order and the original proposed order that Plaintiff had attached to the dismissal motion is that the dismissal order requires any fee applications or other requests for relief to be filed no later than October 7, 2019. The bankruptcy court added that deadline to ensure that if there any further filings by any party in this dismissal case, they be made as soon as possible so that the court could promptly close this case consistent with its ordinary practice. Bankr. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.7-8.

On October 2, 2019, the Debtor's professionals, Defendants here, filed applications for compensation, or fee applications, for their services rendered during the course of the bankruptcy proceeding as allowed

8

pursuant to 11 U.S.C. § 330. Appls. for Compensation, Adv. P. No. 19-43217, ECF Nos. 131, 132. On October 22, Plaintiff filed its objection to the fee applications. Objs., Adv. P. No. 19-43217, ECF Nos. 145, 146. The bankruptcy court scheduled a hearing on the fee applications for November 22.

Around the same time, after the bankruptcy court dismissed the Debtor's bankruptcy matter, but within the time set by the bankruptcy court, Plaintiff filed a post-dismissal request for relief, moving for an accounting and disgorgement of the Defendants' professional fees. Mot. for Disgorgement, Adv. P. No. 19-43217, ECF No. 135. On October 18, 2019, the Defendants filed an Objection to the IRS's motion for an accounting and disgorgement of the professional fees. Obj., Adv. P. No. 19-43217, ECF No. 140. On October 29, the bankruptcy court held a hearing and took the disgorgement motion under advisement. Bankr. Ct. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.8.

While the parties were awaiting the hearing on the fee applications, on November 5, 2019, the bankruptcy court issued an opinion and order denying Plaintiff's motion to disgorge. Bankr. Ct. Op., Adv. P. No. 19-43217, ECF No. 153; Bankr. Ct. Judgment, ECF No. 154. The bankruptcy court found that it had jurisdiction over the disgorgement motion because the acts giving rise to the motion occurred while CPS was a debtor. Op., Adv. P. No. 19-43217, ECF No. 153, PageID.13. However, the bankruptcy

9

court declined to exercise its jurisdiction, finding that the request for an accounting was a discovery request and that, because there was no pending matter within the bankruptcy case, there would be no bankruptcy-law purpose to granting such discovery. Further, although the bankruptcy court agreed that all administrative expense claims were entitled to pro rata treatment, it declined to order such treatment because there had been no distribution of estate property and would be no distribution of estate property because the case had been dismissed and the property had revested. *Id*. at PageID.18-19. On November 20, 2019, Plaintiff appealed the bankruptcy court's order to this Court. Brief of Appellant, Case No. 19-13427, ECF No. 11.

At the November 22, 2019 hearing on Defendants' fee applications, Plaintiff made an oral motion for reconsideration of the disgorgement motion or, in the alternative, for the bankruptcy court to abstain from ruling on the fee applications filed by the Defendants. On December 3, 2019, the bankruptcy court issued orders granting in part and denying in part the fee applications and denying Plaintiff's oral motion for reconsideration or abstention. Bankr. Ct. Op., Adv. P. No. 19-43217, ECF No. 171. The bankruptcy judge found that Plaintiff had waived those arguments because it did not raise them in writing or at any time before the hearing. The bankruptcy judge added that Plaintiff cited to no case law in support of its oral requests. *Id*. at PageID.11. As it had with the

opinion and order denying Plaintiff's motion to disgorge, Plaintiff also appealed the order to this Court. Brief of Appellant, Case No. 19-13711, ECF No. 5.

On September 18, 2020, this Court issued orders affirming the two decisions of the bankruptcy judge. *See* Orders, Case No. 19-13427, ECF No. 15 and Case No. 19-13711, ECF No. 15. The first appeal challenged the bankruptcy court's order denying the motion for disgorgement on the merits. Brief of Appellant, Case No. 19-13427, ECF No. 11. In that order, this Court first agreed with the bankruptcy court that the requirements of pro rata distribution had no applicability to a dismissed Chapter 11 case where the estate's assets were never distributed. Order, Case No. 19-13427, ECF No. 15, PageID.1839-40. Furthermore, this Court affirmed the bankruptcy court's reasoning that disgorgement is not a remedy that is consistent with a dismissed Chapter 11 case. *Id.* at PageID.1847-48. This Court held that it is ultimately the Debtor's responsibility, not the Defendants here, to pay the post-petition taxes. *Id.* at PageID.1846-47.

The second appeal challenged the bankruptcy court's conclusion that Plaintiff waived its opportunity to file a motion for reconsideration of the same order by waiting until the hearing on the fee applications to make an oral motion. Brief of Appellant, Case No. 19-13711, ECF No. 5. In that order, this Court found that Plaintiff could have filed a motion for

reconsideration of its disgorgement motion within fourteen days of when it was denied, at the very least, to preserve the right to do so. Order, Case No. 19-13711 No. 15, PageID.1897-98. Alternatively, Plaintiff could have asked the bankruptcy judge for an extension of time to file such a motion in order to assess its options based on what happened with the fee applications. *Id.* And even if Plaintiff had waived its arguments, the bankruptcy judge still addressed its motion on the merits and rejected the argument, pointing out that Plaintiff cited to no law in support of its argument. *Id.* at PageID.1898. This Court held that that the bankruptcy court did not err in holding that the arguments Plaintiff made at the hearing were waived. *Id.*

While Plaintiff's two appeals were pending, Plaintiff also filed this lawsuit, which is now before the Court. *See* ECF No. 1. Here, Plaintiff advances two new theories related to the same disputed funds that were at issue in the Debtor's Chapter 11 bankruptcy matter. For its first claim, Plaintiff alleges that because the Debtor failed to pay some of its tax obligations, the fees Defendants received from the Debtor were subject to a trust held in favor of the United States. ECF No. 1, PageID.14-15. In its second claim, Plaintiff alleges that the fees held by Defendants are subject to federal tax liens that arose upon assessment of tax against ACS. *Id.* at PageID.1-2. In opposing the action, Defendants each filed a

motion to dismiss for failure to state a claim on the theory that res judicata bars Plaintiff's claims.

## II.    Legal Standard
### a. Rule 12(b)(6) Motion to Dismiss.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id*. But courts may also look to "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss" without altering this standard. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011). In evaluating the motion, courts "must construe the complaint, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement

to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-679).

## III.  Discussion

Defendants each filed a motion to dismiss raising the affirmative defense that res judicata bars Plaintiff's claims here because they should have been litigated in the prior Chapter 11 bankruptcy matter. *See* ECF Nos. 10, 11. Plaintiff responds that Defendants are judicially estopped from claiming that the issues here are barred by res judicata, and even if judicial estoppel did not apply, that the application of res judicata would be inappropriate. *See* ECF No. 13. In reply, Defendants jointly argue that judicial estoppel did not apply because in acknowledging that Plaintiff had the right to exercise its non-bankruptcy collection rights, Defendants did not represent that they would not oppose such an action against them. *See* ECF No. 15. Defendants also maintain that Plaintiff is barred from bringing these claims because it had the opportunity to raise these

14

new theories about the disputed fees in the prior action and that these claims arise out of the same operative facts. *See id.*

Res judicata bars a subsequent claim if a prior claim satisfied the following elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies', (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). Res judicata applies even if the prior action took place in bankruptcy court. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir. 2008).

In *Browning*, the Sixth Circuit concluded that all of the elements of res judicata were met. 283 F.3d at 771. The case arose out of a dispute between the trustees of an employee stock ownership plan and the majority shareholder of the company. The parties entered into a settlement agreement but three years later, the company filed for Chapter 11 bankruptcy. A few days after the bankruptcy filing, some of the employees and participants of the stock ownership plan sued the majority shareholder in federal court alleging that the settlement was procured by fraud. The majority shareholder's first law firm was also sued on a theory that, in procuring the settlement, its lawyers breached

their fiduciary duties and committed legal malpractice. During the early stages of the bankruptcy proceeding, the first law firm stayed on as special counsel while a second law firm took over as the company's general counsel. *Id.* at 768.

Approximately one year after a bankruptcy court confirmed the stock ownership plan, the majority shareholder's first law firm filed for summary judgment in federal court on all claims pending against them. *Id.* at 769. The district court granted the motion, holding that the claims against the majority shareholder's first law firm were barred by res judicata because of the bankruptcy court's confirmation of the stock ownership plan. The matter was then appealed to the Sixth Circuit.

There, the court analyzed each element of res judicata to determine whether it applied to the matter. The Sixth Circuit recognized that, "confirmation by a bankruptcy court 'has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.'" *Id.* at 772 (quoting *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991)). Next, the court found that although another law firm replaced them as counsel, the majority shareholder's first law firm was in privity and a party to the proceedings because they first proceeded "on behalf of the debtor…[and] remained as special counsel throughout the proceeding." *Id.* at 771. Further, the claims against the

16

first law firm should have been raised in the bankruptcy proceeding and res judicata applied to those claims. *Id*. at 773. In addition, the claims against the first law firm were related to the bankruptcy proceeding because "if they had been brought during the proceeding, any recovery received by [the company] would have represented an asset, available for distribution to [the company's] creditors and shareholders." *Id*. (citing *In re Micro-Time Mgmt. Sys., Inc.*, 1993 WL 7524, at \*4 (6th Cir. 1993)). Finally, there was an identity of claims between the bankruptcy proceedings and those alleged against the first law firm because its representation of the majority shareholder in connection with the initial disputes and the resulting litigation and settlement "contributed to [the company's] bankruptcy…" *Id*. at 774.

### a. Whether judicial estoppel applies to Defendants' arguments.

As an initial matter, Plaintiff argues that the doctrine of judicial estoppel bars Defendants from arguing that Plaintiff cannot bring this claim in this Court. ECF No. 13, PageID.143. When the Defendants opposed the disgorgement motion before the bankruptcy court, Defendant Schafer and Weiner argued on behalf of both professional firms that "the IRS has all of the rights available to it under subchapter 64 of the IRC to collect any unpaid taxes." *Id*. at PageID.143-44. In the same briefing, Defendants stated that Plaintiff chose to exercise "its superior non-bankruptcy collection rights" because Plaintiff sought

17

dismissal rather than conversion. *Id.* at PageID.144. In ruling in Defendants' favor, the bankruptcy court adopted their argument that "the IRS was left to its non-bankruptcy remedies." *Id.*

Here, because the bankruptcy court ruled in Defendants' favor in the prior action, Plaintiff interprets these statements to mean that Defendants are "judicially estopped from claiming in this proceeding that the United States is precluded from exercising its non-bankruptcy remedies." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). In *New Hampshire*, the Supreme Court outlined three factors that courts look to in order to determine whether to apply judicial estoppel to a claim. 532 U.S. at 743. First, "a party's later position must be clearly inconsistent with its earlier position." Second, "courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position." Finally, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

But the Court need not engage in a complete judicial estoppel analysis because Defendant's position to defend itself here is not "clearly inconsistent with its earlier position." *See id.* Taking its allegations in the light most favorable to Plaintiff, the Court cannot conclude from Defendants' statements in the prior action that they would not or could not later oppose Plaintiff's decision "to exercise 'its superior non-

bankruptcy collection rights'" in a district court. *See* ECF No. 13, PageID.144. In other words, one party admitting that another party has the right to exercise a cause of action against them does not necessarily mean that the party admits that it would not oppose the exercise of that right. Therefore, Defendants' statements in the prior action are not inconsistent with the arguments they raise here. For this reason, Plaintiff's assertion that Defendant is judicially estopped from raising the doctrine of res judicata must fail.

> **b. Defendants provided professional services to the Debtor in the prior action such that they were in privity.**

Returning to res judicata, the parties agree that the first element has been met. It is undisputed that the decisions by the bankruptcy court on the disgorgement motion and fee objection constitute "a final decision on the merits by a court of competent jurisdiction." *See* ECF No. 13, PageID.133; *see also Browning*, 283 F.3d at 771-72. Accordingly, the Court must assess the remaining three elements.

Defendants contend that the second element of res judicata is satisfied because "this action is a subsequent action between the same parties—[Defendants] and the IRS." ECF No. 10, PageID.49, ECF No. 11, PageID.116. Defendant Schafer and Weiner argues specifically that they are in privity with the Debtor because "their interests were aligned with CPS and adequately protected in the CPS case." ECF No. 11, PageID.121.

Plaintiff counters that there was not sufficient privity between Defendants and the Debtor because "the dispute with CPS involved the tax claim against CPS's bankruptcy estate whereas the dispute now is one regarding whether the tax liens or trust claims took primacy over any claim of Defendants' against CPS's escrowed deposits once those deposits revested from the estate to CPS." ECF No. 13, PageID.148.

The Sixth Circuit has held that professional firms are in privity with their clients for purposes of res judicata. *Kimball v. Orlans Assocs. P.C.* held that attorney defendants were in privity with a bank concerning a mortgage foreclosure "by virtue of their position as foreclosure counsel." 651 Fed. App'x 477, 481 (6th Cir. 2016). In *Browning*, the court held that the debtor's first law firm was in privity with the debtor even though it had been replaced as debtor's counsel only one month after the bankruptcy petition was filed because debtor's first law firm "participat[ed] in the proceeding on behalf of the debtor" and "remained as special counsel throughout the proceeding." 283 F.3d at 772.

Here, Plaintiff sees the test for privity as hinging on the nature of the parties' claims. Plaintiff argues that because its tax claim against the Debtor before the bankruptcy court is different from the one here, which recharacterizes the dispute about the Defendants' fees as one about tax liens and trust claims, there is no privity between Defendants and their

client. *See* ECF No. 13, PageID.148. But privity arises from relationships between parties and their interests, not from the similarity of the claims against them. *See Browning*, 283 F.3d at 772. On March 22, 2019, the bankruptcy court granted the motion to appoint Defendant Schafer and Weiner as counsel to the Debtor. ECF No. 1, PageID.7. Likewise, on April 3, 2019, the bankruptcy court granted the motion to appoint Defendant Harmon Partners as financial advisor. *Id.*, PageID.7-8. The record shows that both Defendants remained in these positions through the dismissal of the bankruptcy matter on September 23, 2019. ECF No. 1, PageID.12. As professional advisors appointed to serve the Debtor in its bankruptcy matter, the Court finds that Defendants were in privity with their client for purposes of res judicata. *See Kimball*, 651 Fed. App'x at 481; *see also Browning*, 283 F.3d at 772.

### c. Plaintiff's claims here were waived or should have been litigated in the bankruptcy matter.

The third element of res judicata addresses whether the issues raised here were either actually litigated or should have been litigated in the prior action. Defendants assert that the facts supporting the Plaintiff's claims here were known to it during the bankruptcy case. ECF No. 11, PageID.116-17. Based upon its knowledge of these facts, Plaintiff, on behalf of the IRS, "unsuccessfully sought to disgorge fees" because the bankruptcy court overruled Plaintiff's objections and held that the Defendants should be awarded their fees through July 30, 2019. *Id.* at

PageID.117. Plaintiff, however, responds that because the bankruptcy court had abstained from exercising jurisdiction over the disputed funds in Defendants' possession, Plaintiff could not have litigated the issue in the prior action. ECF No. 13, PageID.137-39.

In considering this third element, the Court must determine both whether a party raised a claim previously and whether it *could* have brought a claim in the prior proceeding. "Bankruptcy courts have original jurisdiction over claims arising under the Bankruptcy Code." *Browning*, 283 F.3d at 772-73 (citing 28. U.S.C. § 1334(b)). Bankruptcy courts also have limited jurisdiction to "submit proposed findings of fact and conclusions of law to the district court" over claims not arising under the Bankruptcy Code but are "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). A claim is related to a bankruptcy proceeding "if it would have affected the debtor's rights or liabilities." *Browning*, 283 F.3d at 773 (citing *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996)).

In *Browning*, the company's claims against the first law firm were related to the bankruptcy proceeding because "if they had been brought during the proceeding, any recovery received by [the company] would have represented an asset, available for distribution to [the company's] creditors and shareholders." *Id.* (citing *Micro-Time*, 1993 WL 7524, at *5). *Browning* then held that the claims should have been litigated in the prior action because the company could have raised its claims against the

first law firm in the bankruptcy court but failed to do so. *Id.* at 779. (citing *Chattanooga Wholesale Antiques*, 930 F.2d at 463).

### i. The bankruptcy court's decision to abstain from exercising jurisdiction does not act as a bar to the defense of res judicata.

As a threshold matter, Plaintiff argues that the bankruptcy court's abstention from exercising jurisdiction acts as a bar to Defendants' claim of res judicata. ECF No. 13, PageID.137. Plaintiff relies on *Aaron v. O'Connor* for the proposition that a federal court's dismissal of a case on abstention grounds cannot satisfy the "actually litigated" standard under res judicata. 914 F.3d 1010, 1020-21 (6th Cir. 2019). The Court disagrees with Plaintiff that *Aaron*, and its application of the *Younger* abstention doctrine, is appropriate here. *See Younger v. Harris*, 401 U.S. 36, 44 (1971).

The Supreme Court established in *Younger* that federal courts must decline to exercise jurisdiction in three different circumstances. *Aaron*, 914 F.3d at 1016 (citing *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)). These three circumstances are (i) "when there is an ongoing state criminal prosecution," (ii) "when there is a civil enforcement proceeding that is 'akin to [a] criminal prosecution[].'", and (iii) "when there is a 'civil proceeding[] involving certain orders that are uniquely in furtherance of the state courts' ability

23

to perform their judicial functions." *New Orleans Public Service*, 491 U.S. at 368.

In *Aaron*, the Sixth Circuit considered whether a district court's reading of the *Younger* abstention doctrine permitted abstention from hearing plaintiffs' claims. *Id*. at 1016. The plaintiffs were a large group of patients who had brought medical malpractice claims in Ohio state court against a doctor who operated on them. *Id*. at 1013. But the plaintiffs requested that a federal district court in Ohio enjoin the state court judges from deciding their case, alleging that the judge presiding over the case and the Chief Justice of the Ohio Supreme Court were biased against their claims. The district court held that *Younger* abstention applied, declined to exercise jurisdiction, and dismissed the case with prejudice. *Id*. at 1014-15. In affirming the lower court's holding, the Sixth Circuit reasoned that "in certain circumstances, allowing a federal suit to proceed threatens 'undue interference with state proceedings,' and the proper course is for the federal court to abstain from entertaining the action." *Id*. at 1016. Relevant to Plaintiff's argument here, *Aaron* concluded that a federal court's abstention under *Younger* "does not operate to bar the plaintiffs from again bringing the same claims" when the decision to withhold from exercising jurisdiction is based on the "substance of the plaintiffs' claims and our relationship to the Ohio state courts." *Id*. at 1021.

There are problems with applying the facts and the *Younger* abstention doctrine to our case. Most pertinent is that the bankruptcy court's abstention here was not based on any of the three different requirements the Supreme Court outlined in *Younger*. *See Younger*, 401 U.S. at 44. There is no ongoing state criminal prosecution. *See id*. There is no civil enforcement proceeding "akin to a criminal prosecution." *See id*. There are no civil proceedings mandating orders "that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *See id*. And, of course, this case has nothing to do with the relationship between federal courts and state courts, while *Aaron* stressed the tension between the two and the need to avoid undermining respect for their separate functions. But here, there is no concern about this Court's relationship with state courts. While it is true that this Court takes the record of the bankruptcy proceedings as it stands, as *Browning* states, federal district courts and bankruptcy courts often administer justice in tandem. Bankruptcy courts, like federal district courts, "may hear a proceeding that is not a [bankruptcy] proceeding." Further, bankruptcy courts may "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge." *See Browning*, 283 F.3d at 773.

In addition, the reasons given for the bankruptcy court's refusal to exercise jurisdiction in the prior action leave no doubt that *Younger* has

no relevance here. In its November 5, 2019 order, the bankruptcy court explained why the matter was not a good case in which to exercise jurisdiction. Bankr. Ct. Order, Case No. 19-43217, ECF No. 153, PageID.16. There, Plaintiff moved for disgorgement "based on the IRS's contention that all administrative expense claims are entitled to a pro rata share of any distribution of estate property." *Id*. at PageID.15. But the bankruptcy court noted that "[i]f the IRS wanted to have a distribution of estate property, it could have requested that this case be converted to Chapter 7 rather than dismissed." *Id*. Next, the IRS argued that the bankruptcy court retain jurisdiction to grant the relief requested because a previous order set an outside date for any party to file a request for relief in the case. The bankruptcy court answered that it "set an outside deadline for any party to file whatever they intended to file with the Court before the Court closed this dismissed case in accordance with its ordinary practice." *Id*. at PageID.16. In stating its reasons for declining to exercise jurisdiction, the bankruptcy court was clear:

> Simply put, the Court is not going to permit the IRS to use CPS's failure to pay taxes as the basis to request dismissal and then, having succeeded in that request—ending the case—permit the IRS to turn around and begin to file in the dismissed case *brand new requests for relief that the IRS could have brought while the case was still pending*, based on the very same failure to pay taxes.

*Id*. at PageID.18 (emphasis added). The bankruptcy court assessed the substance of Plaintiff's brand-new requests and found them wanting and

26

inconsistent with fundamental precepts of due process. In short, none of the concerns that animate the reasons for abstention under *Younger* are present here. Accordingly, the Court rejects Plaintiff's argument that *Younger* and its progeny require that the bankruptcy court's decision to decline to exercise jurisdiction bars the application of res judicata.

Plaintiff also relies on *Wilkins v. Jakeway* to assert that a dismissal for lack of subject matter jurisdiction is not a determination on the merits for the purposes of satisfying the "actually litigated" element of res judicata. 183 F.3d 528, 533 n.6 (6th Cir. 1999). But the bankruptcy court did not dismiss the prior action for lack of subject matter jurisdiction—it concluded that "it does have jurisdiction over the Disgorgement Motion." Bankr. Ct. Order, Case No. 19-43217, ECF No. 153, PageID.13. Rather, the bankruptcy court pondered whether it *should* exercise its discretion and concluded it should not because Plaintiff's purpose for requesting it to exercise jurisdiction fell outside the purview of a dismissed Chapter 11 case.

In the Sixth Circuit, *Rogers v. Stratton Industries* established that a dismissal for lack of subject matter jurisdiction is not on the merits because if a court lacks jurisdiction, it cannot address the merits of a case. 798 F.2d 913, 917 (6th Cir. 1986). However, *Rogers* distinguishes instances where a party asserts a statutory right and the court accepts the opposing party's argument that the claim does not come within the

27

purview of that statute. *Id*. The court concluded that "the judicial acceptance of that defense, however it is accomplished, is the death knell of the litigation and has the same effect as a dismissal on the merits." *Id*.

That is what happened here. In the bankruptcy matter, Plaintiff asserted its statutory right by requesting an accounting and arguing that it was entitled to pro rata sharing of the bankruptcy estate pursuant to the Bankruptcy Code. Bankr. Ct. Order, Case No. 19-43217, ECF No. 153, PageID.13. But the bankruptcy court rejected both of Plaintiff's assertions, reasoning that because there was no pending matter within the bankruptcy case, a request for accounting amounted to an inappropriate discovery request. *Id*. at PageID.14. As for pro rata sharing of the funds to Plaintiff pursuant to the Bankruptcy Code, the bankruptcy court declined to order such treatment after it found that there had been no distribution of estate property and would be no distribution of estate property. *Id*. at PageID.16. In light of its findings, the bankruptcy court then concluded in its discretion that it *should not* exercise jurisdiction. *Id*. at PageID.17. The decision to decline to exercise jurisdiction for related to the underlying merits of Plaintiff's arguments; it is not comparable to a dismissal for lack of subject matter jurisdiction. Accordingly, the bankruptcy court's decision to decline Plaintiff's requested relief under certain statutory rights constituted "the death

knell of the litigation and has the same effect as a dismissal on the merits." *See Rogers*, 798 F.2d at 917.

> ii. **Whether claims of this case were waived or should have been litigated in the prior action.**

Turning to the central analysis of whether the issues Plaintiff raises here were either waived or should have been litigated in the prior action, Plaintiff argues that it could not have "raised its claims in the contested matter on the fee applications" because its disgorgement motion before the bankruptcy court "was premised on a different kind of claim" than the issues here. ECF No. 13, PageID.139. Plaintiff explains that the disgorgement motion "was based on equal or shared administrative priority under 11 U.S.C. § 507" but this case "is based on tracing trust funds (Count I) or enforcing prepetition liens (Count II)." *Id*.

Before proceeding with its analysis, however, the Court finds the bankruptcy judge's words worth reiterating here in order to contextualize these issues within the history of the bankruptcy proceedings. *See* Bankr. Ct. Order, Case No. 19-43217, ECF No. 171. In its December 3, 2019 order addressing Plaintiff's objection to Defendants' fee application, the bankruptcy court noted Plaintiff's "penchant…for making new, surprise arguments at a hearing that have not been previously made in writing." *Id*. at PageID.9. And, "three different times it has showed up at a hearing with a brand new set of oral arguments not in its papers." *Id*. at 9. Citing

Sixth Circuit precedent in considering such arguments waived, the
bankruptcy court applied the "well-established procedural rule…that
failure to raise an argument in a motion acts as a waiver of that
argument," including "arguments not raised in a response or reply." *Id.*
(citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-53 (6th Cir.
2008)). The purpose of this rule "is to give the other party 'a fair
opportunity to respond to all arguments.'" *Id.* (citing *United States v.
2007 BMW 335i Convertible*, 648 F. Supp. 2d 944, 953 (N.D. Ohio 2000)).
The bankruptcy court concluded that such arguments are waived because
"this practice deprives the other parties to the case of basic due process.
It is not permitted by the rules, and is a waste of time for the Court and
the parties." Bankr. Ct. Order, Case No. 19-43217, ECF No. 171,
PageID.9.

Here, in Count I, Plaintiff argues that "the monthly amounts paid
to [Defendants] therefore constituted trust funds" subject to a special
fund in trust for the United States because the Debtor failed to properly
pay taxes. ECF No. 1, PageID.4 (citing 26 U.S.C. § 7501). Plaintiff
concedes in its response to the motion to dismiss that if the bankruptcy
court had retained in rem jurisdiction over these funds, then Plaintiff
would have needed to raise this theory in the bankruptcy case or else it
would have been deemed waived. ECF No. 13, PageID.139. But Plaintiff
cites to no case law and the Court could not find convincing support for

the proposition that Plaintiff could not have raised this theory prior to the bankruptcy court's decision not to exercise jurisdiction. Put another way, Plaintiff could have raised this theory as a reason for the bankruptcy court to exercise jurisdiction when it requested briefing and held a hearing on the issue. But Plaintiff did not do so, and as such its arguments in Count I are deemed waived for purposes of res judicata.

As to Count II, Plaintiff argues that it could not have raised its theory about enforcing the prepetition federal tax liens in the disgorgement motion because, by its own admission, Plaintiff did not anticipate that the bankruptcy court would deny its request to retain jurisdiction to effectuate pro rata sharing of bankruptcy estate. ECF No. 13, PageID.139-40. Plaintiff offers the explanation that until the day before disgorgement hearing, "it was not on notice that the Defendants would file applications for fees, without which [Plaintiff] would not have needed to make the disgorgement motion." The record does not support this interpretation of the bankruptcy matter timeline.

Rather, the record shows that Defendants filed their fee applications on October 2, 2019 and Plaintiff filed a consolidated objection on October 22, 2019. Most relevant here, the bankruptcy court issued its order declining to exercise jurisdiction on November 5, 2019 and then held a hearing on the issue of fee applications on November 22, 2019. This means that Plaintiff had *seventeen days* between the

bankruptcy court's decision declining jurisdiction to effectuate pro rata sharing of the bankruptcy estate and the hearing on the fee applications. And the bankruptcy court noted that Plaintiff, in addition to briefing two arguments in its fee objection, had the diligence to discover four new arguments by the time of the hearing on the fee application. Order, Case No. 19-43217, ECF No. 171, PageID.8. In addressing the four new arguments at the hearing, the bankruptcy court admonished Plaintiff and reiterated that "[p]arties can always alert an opponent that they wish to make new arguments and ask a court for the opportunity to supplement their papers." *Id*. at 10. But Plaintiff did not do so there. Never mind Plaintiff's admission that it failed to raise alternative arguments in the event that its own motion might be denied; Plaintiff had seventeen days to ask to file supplemental briefing on the issue of whether Defendants' request for fees was subject to federal tax liens. Plaintiff cannot now say that it could not have raised the arguments it raises here because the record shows there was enough time, seventeen days, between the occurrence of the event Plaintiff claims was necessary to raise the arguments here and the bankruptcy court's determination of the fee application. *See id*.

It is not the role of the Court to save a party from the consequences of its strategy or its failure to raise arguments in a timely fashion. Nothing in the bankruptcy court's order or the briefings in the record

suggests that after the bankruptcy court denied Plaintiff's request to exercise jurisdiction, it could not have raised its theory about enforcing the federal prepetition tax liens while waiting for the bankruptcy court to make a determination on the fee applications. Therefore, the Court finds that Plaintiff waived its arguments under Count II because it could and should have litigated them in the prior action.

### d. The claims arise from the same series of transactions and operative facts.

Defendants argue that in this action Plaintiff is "attempt[ing] to articulate new claims based on the same nucleus of facts" and that "the claims seek to redress the same basic alleged wrong—the failure of CPS to pay its withholding taxes." ECF No. 10, PageID.50; ECF No. 11, PageID.118. Plaintiff responds that this argument is true only "at the highest possible level of abstraction." ECF No. 13, PageID.145. Rather, Plaintiff contends that Count I deals with different operative facts because it "has to do with CPS's conduct during the bankruptcy, and the specific funds which were used to pay operating costs and escrowed as deposits toward as-yet-to-be-allowed professional fees." ECF No. 13, PageID.146. And the operative facts underpinning Count II are different because they characterize the funds in dispute as subject to "federal tax liens." ECF No. 13, PageID.145. Defendants reply that the operative facts "were known to the IRS at the time of the Bankruptcy case" and "the IRS

has not raised new operative facts in its Complaint related to the source of funds used to pay [Defendants]." ECF No. 15, PageID.206.

The final element of res judicata requires that there be an identity of claims, and this is satisfied where "the claims arose out of the same transaction or series of transactions, or whether claims arose out of the same core of operative facts." *Browning*, 283 F.3d at 774 (citing *Micro-Time*, 1993 WL 7524 at *5. In *Browning*, the court found that the majority shareholder's first law firm's involvement in the original dispute giving rise to the present bankruptcy action constituted "the same core of operative facts." The first law firm's involvement related to multiple legal disputes spanning years. *Id*. The Sixth Circuit held that this was enough to constitute an identity of claims. *Id*.

Here, one of the central issues of the bankruptcy proceedings was the determination of the fee applications of the Defendants. Bankr. Ct. Order, Case No. 19-43217, ECF No. 171, Page 5. The bankruptcy court resolved that issue on December 3, 2019, when it granted Defendant Schafer and Weiner's fee application and awarded the firm fees totaling $98,565.99. ECF No. 1, PageID.13. In the same order, the bankruptcy court also granted Harmon Partner's fee application and awarded the firm $33,390. ECF No. 1, PageID.13-14; *see also* Bankr. Ct. Order, Case No. 19-43217, ECF No. 171, PageID.4.

Now, in this case, Plaintiff advances two allegations against Defendants which relate to some if not all of the fees that the bankruptcy court awarded the Defendants. *See* ECF No. 1. But in attempting to disprove that there is an identity of claims, Plaintiff misses the mark. Plaintiff does not argue that the facts are different in this case from the bankruptcy case—it does not claim, for example, that the funds in dispute before this court are different from those that were in issue before the bankruptcy court.  Rather, Plaintiff is offering different legal bases to support its claims as to which party is entitled to take possession of the exact same funds. These are questions of law regarding the same operative facts and series of transactions. And they are the kinds of questions that the bankruptcy court already addressed at length and that this Court affirmed. *See* Bankr. Ct. Order, Case No. 19-43217, ECF No. 171. Therefore, the Court finds that there is an identity of claims between this case and the preceding bankruptcy matter.  All of the elements of res judicata are therefore present here.

## CONCLUSION

For the reasons stated above, the Court finds that res judicata applies to Plaintiff's claims and therefore Defendants' Motion to Dismiss is **GRANTED**.  The Complaint is therefore **DISMISSED** with prejudice.

**IT IS SO ORDERED.**


Dated: December 30, 2020

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE